GEORGE KNOLMEYER, PETITIONER-RESPONDENT, v. NEW JERSEY STATE HIGHWAY DEPARTMENT, RESPOND-ENT-PROSECUTOR.

Argued January 19, 1943—Decided April 26, 1943.

Before Justices CASE and DONGES.

For the petitioner-respondent, *Strong & Strong* (*Theodore Strong*).

For the respondent-prosecutor, *David T. Wilentz,* Attorney-General, and *Robert S. Hartgrove,* Assistant Attorney-General.

The opinion of the court was delivered by

CASE, J. The Workmen's Compensation Bureau found for the petitioner, and the Middlesex Pleas affirmed on appeal.

Petitioner was employed by the Highway Department as a laborer on the roads. On January 31st, 1935, while at work, he was hit by a skidding automobile and severely injured. He received a comminuted fracture of the left femur extending into the knee joint, suffered a concussion of the brain and was unconscious for hours following the accident. The

department paid petitioner temporary disability from January 31st, 1935, to April 20th, 1937, at the rate of $13.33 per week, amounting to $1,590.08, and permanent disability of the left leg for seventy weeks, from April 20th, 1937, to August 23d, 1938, at the same rate amounting to $933.10; and it paid medical and hospital expenses in his behalf in the amount of $1,323.75. The defendant refused to make further payments, and the workman thereupon, February 15th, 1940, filed his petition for compensation. The department answered and admitted that the petitioner had the accident, that the department had notice thereof, that petitioner was at the time in the employ of the department and that the accident arose out of and in the course of the employment.

Hearings were begun on November 8th, 1940. Petitioner then testified at length regarding the facts of the accident, the subsequent operations, hospitalizations and treatment and his then condition, and gave the history and description of the injuries and their effects. For reasons that are not stated in the record, but by fair inference lie in the convenience of counsel and the medical witnesses, the further hearings were desultory and continued over a long period—February 20th, 1941, June 6th, 1941, July 18th, 1941, August 1st, 1941; and the final determination of facts and rule for judgment was made on December 23d, 1941. The deputy commissioner seems to have anticipated some delay because on November 8th, 1940, immediately following the hearing, he announced that on the evidence then taken the petitioner was entitled to a further award for temporary disability and that because of his "necessitous condition" an allowance of four weeks' additional temporary disability would be immediately awarded, subject to adjustment on the final disposition. No objection was made to that course, and on November 15th, 1940, the findings were incorporated into a preliminary determination of facts and rule for judgment, within which was included the direction that "a final hearing of the claim be held as soon as convenient." On November 22d the attorneys for both sides were again before the Commissioner, who then made a supplemental determination and finding that two weeks' additional compensation should go to the petitioner for temporary

disability and that the final hearing be had on December 6th, 1940. That direction as to time of hearing was not observed.

The final adjudication, made on December 23d, 1941, found that the petitioner had suffered a permanent disability equal to fifty per centum of total and awarded 250 weeks' compensation at the rate of $13.33 per week, less the 70 weeks already paid, and recited, approvingly, the orders of November 15th, 1940, and November 22d, 1940.

Prosecutor complains that the determination of December 23d, 1941, does not find that the accident arose out of and in the course of the employment and that no jurisdictional facts were presented to the Bureau to support the orders of November 15th, 1940, and November 22d, 1940. Prosecutor admitted the essential jurisdictional facts in its filed answer and did not, so far as we discover, change its position before the Bureau. The determination of November 15th, 1940, specifically found that the accident arose out of and in the course of the employment. The determination of December 23d, 1941, in our view, gathered up and reincorporated within itself the earlier orders. Taking the proof in its entirety there was ample to support all of the findings. We do not commend the method of intermittent findings on uncompleted testimony, but that course seems not to have been opposed or criticised before the Bureau.

The charge that the nature and extent of the injuries existing at the time of the award are not determined, is not, in our opinion, sustained.

Finally, it is said that the Bureau adopted a wrong basis or method for determining compensation. The reasoning seems to be that the allowance should have been for a disabled member rather than for a general bodily disability. The man did not merely suffer a broken leg. He did, it is true, have that injury in a severe form. The bone was splintered. Particles have, from time to time, been removed; an operation that will likely have to be repeated in the future. The leg is shortened. The man has repeatedly been hospitalized because of the leg and knee condition. But he was injured beyond that. The doctor who treated petitioner for the first six or seven months saw him immediately after the accident.

He testified that the man was then in a semi-comatose condition which lasted from two to three hours and which the witness thought was caused by a concussion of the brain, and that petitioner had received an injury to his head and a fracture of his leg. The doctor further testified (June 6th, 1941) that the petitioner's leg, at the time of the hearing, was shortened by an inch and a half; that there was still stiffness in the knee joint; that he was suffering from chronic osteomyelitis; that he complained subjectively of roaring in the ears, and also of dizziness and headaches, which, in the opinion of the witness, were due to an intracranial hemorrhage caused by the concussion; and that the man, in the witness' opinion, was unable to work and, considering the body as a unit, had suffered a permanent disability equal to 75 per centum of total. Another physician, who had subsequently treated the petitioner, testified, without objection, that petitioner's permanent disability was 75 per centum to 80 per centum of total. An examining physician found a degenerative condition of the central nervous system, which he stated might be produced by any of a number of causes, one of which was trauma, but which, if a concussion is assumed to have occurred, was, in the opinion of the witness, attributable to the concussion, since no symptoms of causative disease were found. Another examining physician, called by the respondent, testified that in his opinion the permanent disability was limited to the leg and was from 60 to 65 per centum of total legal disability.

The findings by the Bureau, fairly read, attribute the general bodily impairments to the accident and in so doing have reasonable support in the proofs. The computation was grounded, correctly as we believe, in the general provision found in the first sentence of R. S. 34:15-12c.

The determination and judgment under review will be affirmed, with costs.